Mark Bradford (MB 6002)
MARK BRADFORD, PC
299 12th Street
Brooklyn, New York 11215-4903
Telephone: (347) 413-3287
mb@markbradfordpc.com

Cara R. Burns (CB 1071) (PHV to be requested)
MIMS, KAPLAN, BURNS & GARRETSON
28202 Cabot Road, Suite 300
Laguna Niguel, California 92677
Telephone: (310) 314-1721
Facsimile: (949) 340-9737
cburns@hmkblawyers.com

Attorneys for Plaintiff, Merch Traffic, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

| | |
|---|---|
| MERCH TRAFFIC, LLC | CIVIL NO. 1:25-cv-7045 VSB |
|        Plaintiff, | DECLARATION OF EMILY HOLT IN SUPPORT OF A PRELIMINARY INJUNCTION AND SEIZURE ORDER TO ISSUE |
| v. | |
| JOHN DOES 1-100, JANE DOES 1-100 AND XYZ COMPANY, | |
|        Defendants. | |

_____x

I, Emily Holt, hereby declare as follows:

      1.    I make this declaration in support of a Preliminary Injunction and Seizure Order ("PI & Seizure Order") to issue in this matter in the form attached hereto as Exhibit A, also sent to the Orders and Judgements clerk. Plaintiff Merch Traffic, LLC ("Plaintiff") seeks the proposed PI & Seizure Order to issue in order to stop the sale of infringing T-Shirts and other merchandise ("Infringing Merchandise" or "Bootleg Merchandise") and to seize the same bearing the

trademarks, service marks, likeness, logos, and other indicia (collectively, the "Artist's Trademarks") of the performer known as "**TATE MCRAE**" (the "Artist").  I also submit this declaration to advise the Court of the service of the previously issued Temporary Restraining Order, Seizure Order and Order to Show Cause Why a Preliminary Injunction and Seizure Order Should Not Issue (the "TRO & Seizure Order") and the seizure of Infringing Merchandise thereon. As set forth in my previously filed declaration, I am Vice President of Business and Legal Affairs for Plaintiff, and I am authorized by Plaintiff to make this declaration.  If called as a witness, I could and would be able to testify competently to such facts.

2. As expected, Defendant Bootleggers appeared to sell Infringing Merchandise since the TRO & Seizure Order was issued. I oversaw the service of the TRO & Seizure Order and seizure of Infringing Merchandise at the concerts.

3. Defendant Bootleggers appeared at the Artist's Madison Square Garden concerts and thereafter at the Artist's the Xfinity (formerly Wells Fargo) Center in Philadelphia, Pennsylvania concert to sell their Infringing Merchandise.  Attached hereto as Exhibit B are true and correct copies of photographs of some of the Defendant Bootleggers selling their Infringing Merchandise at the Artist's Madison Square Garden concerts. Attached hereto as Exhibit C are true and correct copies of photographs of some of the Defendant Bootleggers selling their Infringing Merchandise at the Artist's Xfinity Center, Philadelphia, Pennsylvania concert.

4. Examples of the Infringing Merchandise that the Defendant Bootleggers sold at the concerts can be seen in some of the foregoing photographs.  Closeup examples are attached hereto as Exhibit D, true and correct copies of photographs of examples of some of the Infringing Merchandise seized from Defendant Bootleggers at the Madison Square Garden concerts in New York, New York pursuant to the TRO & Seizure Order, beside examples of the same Infringing

Merchandise observed being sold by Defendant Bootleggers at the Xfinity Center concert in Philadelphia, Pennsylvania, which was after the Madison Square Garden concerts. All contain the Artist's trademarks, which were used by Defendant Bootleggers in their Infringing Merchandise without authorization. Further, as shown by the photographs, the shirts were printed on inferior, second quality garments; indicated because the manufacturer splits the tags. This is done by manufacturers when they are not first quality goods, and they are sold for substantially less than first quality goods.

5. Attached hereto as Exhibit E are true and correct copies of the top portions of some of the Service of Process and Receipt for Goods Seized ("Proof of Service") reflecting service on the Defendant Bootleggers at the Madison Square Garden concerts. A bottom portion of each Proof of Service is offered to each Defendant Bootlegger as a receipt for their seized goods.

6. As has been Plaintiff's experience with past performers' tours and as shown on the Artist's tour so far, it is expected that these Defendant Bootleggers and/or their Infringing Merchandise will continue to travel to upcoming concerts of the Artist. The Infringing Merchandise appears to have been produced in mass quantity and were identical or nearly identical to each other. The Defendant Bootleggers who have been selling the Infringing Merchandise on the tour have circulated in the crowd as the audiences were entering and leaving the venues. Further, some of the infringing shirts' backs had the Artist's tour dates printed, again indicative that Defendant Bootleggers and/or their Infringing Merchandise will travel from concert to concert on the Artist's tour. Because Defendant Bootleggers attempted to sell their Infringing Merchandise before the concerts, they preempt Plaintiff's opportunity to sell authorized merchandise within the venues. Some Bootleggers brought Bootleg Merchandise into the venues to sell.

7. As shown in the examples attached as Exhibits C and D to my initial Declaration (ECF 10-3 and 10-4), and as shown in the attached photographs of the Defendant Bootleggers and their Infringing Merchandise, the same infringing designs have appeared repeatedly throughout the Artist's tour. The only logical conclusion is that the Defendant Bootleggers served at the Madison Square Garden concerts and those selling the same Infringing Merchandise at the concerts both before and after the Madison Square Garden concerts operate together; they are textbook examples of being in active concert and participation with each other. The only way to provide complete relief to Plaintiff is to allow order the continued seizing of the Infringing Merchandise for the duration of the Artist's tour. Further, as also previously set forth, the Defendant Bootleggers will always have the opportunity to appear, while the most important piece of evidence is preserved, and we are able to combat the irreparable continuing harm.

8. The Artist is extremely popular and many concerts on the tour are almost sold out or are sold out. Therefore, due to the popularity of the tour, additional dates may be added. If this happens, we will advise the Court.

9. Based upon the foregoing, Plaintiff is requesting that the Court extend the effect of the TRO and Seizure Order and grant a preliminary injunction binding upon all persons served with process and on any other persons acting in concert with them from selling Infringing Merchandise during the Artist's tour, and to allow Plaintiff to continue to seize such Infringing Merchandise.

I declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct. Executed on September 9, 2025.

_____
**EMILY HOLT**

4